The US District Court
District of Massachusetts

Lars Wishe
V.
Worcester Recovery House, Et al.

FILED IN CLERKS OFFICE
2021 NOV -9 AM 1:15
US DISTRICT COURT
DISTRICT OF MASS.

1.) The Complainant has informed violations of Privacy, Breach of confidentiality communicated to the manager of the Records Officer on or about October 26, 2021 and several times following that. Sections usually shown while medical staff state full name of detainee, interrogate detainee of ins no current notices.

2.) The Complainant made formal grievances to the manager of the records department who stated there was no HIPAA or privacy officer at the facility.

3.) The Complainant communicated the ongoing breaches of confidentiality and Privacy to Ms. D. Leggett of the Department of Mental Health after 4-5 days of not having resolution to the urgent issue of Facility staff using their cell phones while complainant was being forceably interviewed by physicians assistant "Amy" and Psychiatrist after having documented and submitted a refusal of treatment notice upon Complainants, horrified, confused appearance at approximately 10:30pm to the facility. The document was given to several facility employees and stated to an unknown doctor, yet staff essentially harassed, knocked on door, during the night, entered the room sporadically, then argumentatively cancel meals, approximately any 5 minutes.

4.) The Complainant was required to open mail in front of a sitter. The Complainant requested to go into the room to get glasses, was not permitted to do so, thus refused the mail apparently from an unknown mailer. The Complainant was refused access to USPS due to being isolated.

5.) The Complainant has a restricted diet. Items are constantly missing or wrong. The Complainant has attempted to resolve these issues through the grievance process without resolution.

6.) The Complainant has requested to leave the facility.

7.) The Detainee received no information as to rights, policies, procedures at any time.

8.) The Complainant is exposed to conversations by 5-6 'sitters' outside the room all night long so that the Complainant has knowledge of the sitters having to go take his kids to school."

The United States District Court
District of Massachusetts

Lora Winder
v.
T. Fronk
~~former attorney at Suffolk house of detention~~
~~Suffolk county house of correction Williams~~ et al
~~+ unknown warden~~

FILED IN CLERKS OFFICE
2021 NOV -9 AM 1: 15
U.S. DISTRICT COURT
DISTRICT OF MASS.

1.) The Petitioner is not a resident of the state of Massachusetts, but is a citizen of The United States. The Petitioner has a liberty interest.

2.) The Respondent is a principality within the United States.

3.) The Petitioner was arrested by the police department of the principality, The Massachusetts Police Department on or about October 12, (Sunday).

4.) The Petitioner has a right to stand trial under Constitutional due process provisions.

5.) The Petitioner was not mirandized at any point.

6.) The Petitioner was afforded an attorney and spoke with that attorney (briefly 5-10 mins.) after not having slept for at least 48 hours due to starvation, not having been offered food whatsoever during the Petitioner's pretrial detention in the Massachusetts state police department.

7.) The Petitioner requested the attorney communicate to the court the sovereign citizen status of the Petitioner and violations of the constitutional rights of the petitioner whose ~~petition petition alleged~~ 4th ammendment rights were violated at the time of the arrest.

8.) The Petitioner requested the attorney communicate the sovereign citizen status of the Petitioner claiming to the attorney the Petitioner requested the matter be moved to the jurisdiction of the federal court.

9.) The Petitioner was taken to a prison, isolated for approximately two weeks, without access to a telephone or the USPS whatsoever.

10.) At no time did the Petitioner receive communication with the appointed attorney, clergy, or access to the courts.

11.) The Petitioner experienced horrific misconduct from facility employees who ~~the~~ the petitioner should not have been

The United States District Court
District of Massachusetts

exposed to due to their blatant legal conflict with the Petitioner.

12.) The Petitioner filed several formal grievances that were returned w/out cause.

14.) The Petitioner requested, in writing, several times, provisions provided by the Constitution regarding access to the courts, communication w/ an attorney.

15.) The Petitioner communicated with an attorney who was employed by the facility for a brief time (5-10 minutes) having filed the appropriate request slip, enumerating the legal issues to be addressed, (approximately 4-5)

16.) The attorney only approached the cell door of the Petitioner after the Petitioner was forced to bang loudly on the door while he was communicating with another detainee.

17.) The attorney reappeared at the door of the inmate within 24 hours, but had not addressed any of the issues documented. The attorney had the request in his possession at that time. The document listed approximately 5 legal issues to be addressed.

18.) These issues included, 1st amendment rights of detainees, detentions and legal rights concerning sovereign citizenship, use of isolation/seclusion on pre-trial detainees, and was requested to contact the court appointed attorney. He was informed of the PREA allegation made by the detainee while in isolation approached the detainee and given the telephone number.

19.) The attorney stated he would not again be able to research the issues that day, but may return on Monday. The time was approximately 2 pm.

20.) The attorney returned Monday afternoon after the detainee attempted to apprise the detainee's 1st amendment rights but was not allowed to do so, causing the detainee to make the request repeatedly, EXTREMELY audibly.

21.) When the attorney appeared, the Petitioner asked the attorney directly if he had contacted the court appointed attorney. The facility employed attorney responded that he "did not remember" if he had contacted the court appointed attorney of the detainee.

22.) The attorney was requested to take possession of an envelope that did not have a stamp, something which was promised by the attorney. The envelope he was told contained a legal action against certain employees at the facility. The attorney unbelievably left the area while the detainee was attempting to hand the envelope containing the document to the attorney. The detainee had also requested the attorney take possession of all of the documented notes written by the detainee. The attorney agreed, but then left hastily. None of the documents left by the attorney addressed ANY matter requested by the Petitioner.

23.) The attorney left an envelope of approximately 100 pages which the Petitioner did not take possession of as it was left outside the cell door.

24.) Causing an extremely audible response from the Petitioner, within 1 hour, the Petitioner was summoned to another area of the facility and moved to an undisclosed location. The Petitioner requested of the van driver information of the detainee's destination. The driver of the van stated that the Petitioner was being moved to a rehabilitation/drug recovery facility. The terrified petitioner asked the van driver and made statements that violated fifth amendment rights.

25.) The Petitioner asserts that there has been inadequate (if any) legal representation afforded of under the 1st Amendment provisions and debilitating violations to due process provisions, so that the Petitioner has no information regarding the legal disposition of the matters of which the Petitioner is accused, or any rights to be relied upon currently.

26.) The Petitioner asserts that federal evidence concerning this matter was taken from the Petitioner(court) by the driver of the van from the Massachusetts State Police and requests the court take jurisdiction of the matter and requests immediate release from the facility in which the Petitioner is housed.

District of Massachusetts

The complainant requests to proceed in forma pauperis and have the matter <u>sealed</u> due to the highly contentious nature of the matter as well as the assertion that the Complainant has experienced harassment by the Respondents in the matter, to an unfathomable degree. The complainant wishes to proceed by pseudonym.

Pro Se
[signature]
No Fixed Address

The United States
District of Massachusetts

Inmate
210-4811

"WellPath" withun employees
Suffolk County House of Corrections Commissioner Tompkins / willing
Suffolk County Sheriff's Department et al          other employees

## FACTS

1.) The Plaintiff is not a resident of the state, but is a citizen of the United States

2.) The Defendant operates a business in and or is a municipality, in the state.

3.) The Defendant did commit medical malpractice against the Plaintiff and violated the federally mandated PREA regulations repeatedly (Prison Rape Elimination Act) by acts including but not limited to harassing the detainee while in medical seclusion, running water repeatedly on and off at all hours of day and night above the cell of the detainee after her repeated refusal to participate in the medical intake process. The detainee was requested every shift (sometimes at 12:30 am) to repeatedly sign the same document. The detainee was coerced repeatedly to sign they participate in the medical intake, was refused 1st amendment rights when refused, threatened to be put in a "turm" and safety mask if she did not answer questions, was repeatedly exposed to unsher

harassment by guards, at some time, after repeated approaches to the cell door of the detainee just before/during or after being in the area of the toilet, or coughing loudly from the desk at these times, escalating the behavior after the detainee reported to a nurse (without any response), harassing the detainee late at night using all of the above 'techniques,' water running above cell, approaching cell door at inappropriate times, approaching the door shining bright flashlight in the eyes of the detainee, and even after a PREA report or allegation had formally been documented, the behavior continued, provoking an out loud response from the detainee, the Defendant then addressed the detainee (while medically isolated over seven days, without appropriate diet), casually and informally, condescendingly, addressing the detainee as if the 250 LB male had some familiarity with the detainee. The detainee had never seen or spoken to the Defendant whatsoever.

The Defendant had asked a housing officer the appropriate means of acquiring a stamped envelope as the detainee had no access to the telephone. The detainee was informed to file a document (form), which she did on more than one occasion, yet the documents were not picked up for more than 6 or 7 days. The detainee was informed that the form was only allowed on one day of the week, yet when requested, NO form was given, causing the

detainee to wait another entire week to access the U.S. Postal Service. At this time, the detainee had already been secluded for seven days w/out any communication with an attorney or clergy concerning theділе of the detainee. Wherefore, the Plaintiff requests in the amount of $500,000 U.S.

The Plaintiff was exposed to horrific harassment 24 hours/day for at least 14 days w/out access to the courts or an attorney

Inmate has been secluded w/out access to attorney / USPS / clergy for 2 weeks

Pro Se
2104811
No Fixed Address

?

from attorney at
correction facility

rights that remain open to inmates; whether accommodation of asserted rights will have significant "ripple effect" on fellow inmates or prison staff; and whether there is ready alternative to regulation that fully accommodates prisoners' rights at de minimis cost to valid penological interest.

7400 Cases that cite this headnote

5  **Prisons**
Prison regulation which impinges on inmates' constitutional **rights** cannot be sustained as "reasonably related" to legitimate penological interest, where logical connection between regulation and asserted goal is so remote as to render



| | | |
|---|---|---|
| 310 | | Prisons |
| 310II | | **Prisoners** and Inmates |
| 310II(A) | | In General |
| 310k112 | | Regulation and supervision in general; role of courts |
| (Formerly 310k4(1)) | | |

Notes

Quick Check

8

| 3 | Prisons | 🔑 | | |
|---|---|---|---|---|
| | When prison regulation impinges on inmates' constitutional **rights**, regulation is valid if it is reasonably related to legitimate penological interest. | 310<br>310II<br>310II(A)<br>310k112<br><br>*(Formerly 310k4(1))* | | Prisons<br>**Prisoners and Inmates**<br>In General<br>Regulation and supervision in general; role of courts |
| | 5603 Cases that cite this headnote | | | |
| 4 | Prisons | 🔑 | | |
| | In deciding whether prison regulation which impinges on inmates' constitutional **rights** can be sustained as "reasonably related" to legitimate penological interest, court should consider: whether there is valid, rational connection between prison regulation and legitimate governmental interest put forward to justify it; whether there are alternative means of exercising | 310<br>310II<br>310II(A)<br>310k112<br><br>*(Formerly 310k4(1))* | | Prisons<br>**Prisoners and Inmates**<br>In General<br>Regulation and supervision in general; role of courts |

Notes

Quick Check

8

that would fully accommodate **prisoner's rights** at de minimis cost to valid penological interest, then court may consider this as evidence that regulation is not reasonably related to valid penological interest.

2706 Cases that cite this headnote

8  **Prisons**
Inmate-to-inmate correspondence rule, permitting correspondence between immediate family members who were inmates at different institutions or to extent it related to legal matters, but allowing other inmate correspondence only if it was in best interest of parties, was "reasonably related" to legitimate security concerns of prison

| | | |
|---|---|---|
| 310 | | Prisons |
| 310II | | **Prisoners** and Inmates |
| 310II(B) | | Care, Custody, Confinement, and Control |
| 310k144 | | Mail and Correspondence |
| 310k148 | | Internal; inmate-to-inmate |
| *(Formerly 310k4(9))* | | |

Notes

Quick Check

8

| | | | |
|---|---|---|---|
| | policy arbitrary or irrational, or where goal is not legitimate and neutral one. | | |
| | 3906 Cases that cite this headnote | | |
| 6 | **Prisons** 🔑 | | |
| | When accommodation of inmate's asserted constitutional **right** will have significant "ripple effect" on fellow inmates or on prison staff, courts should be particularly deferential to informed discretion of corrections officials in adopting regulation which impinges on that **right**. | **310** **310II** **310II(A)** **310k112** *(Formerly 310k4(1))* | Prisons **Prisoners** and Inmates In General Regulation and supervision in general; role of courts |
| | 466 Cases that cite this headnote | | |
| 7 | **Prisons** 🔑 | | |
| | If inmate who challenges prison regulation as violation of constitutional **rights** can point to alternative regulation | **310** **310II** **310II(A)** **310k112** *(Formerly 310k4(1))* | Prisons **Prisoners** and Inmates In General Regulation and supervision in general; role of courts |

Notes

Quick Check

8

| | | |
|---|---|---|
| | 253k228 | Civil status or condition |
| | *(Formerly 253k9, 310k4(5))* | |
| | 🔑 | |
| | 310 | Prisons |
| | 310II | **Prisoners** and Inmates |
| | 310II(A) | In General |
| | 310k113 | Particular **rights** and disabilities |
| | *(Formerly 310k4(5))* | |
| 11 **Marriage and Cohabitation** | 🔑 | |
| | 253 | Marriage and Cohabitation |
| **Prisons** | 253III | Creation, Existence, and Validity of Marital Relationship |
| Inmate marriage regulation, which prohibited inmates from marrying other inmates or civilians unless prison superintendent approved marriage after finding that there were compelling reasons for doing so, was not reasonably related to any legitimate penological objective, so as to be facially invalid as denial of inmates' constitutional **rights**. U.S.C.A. Const.Amends. 1, 14. | 253III(A) | In General; Requisites and Essentials |
| | 253k221 | Persons Who May Marry |
| | 253k228 | Civil status or condition |
| | *(Formerly 253k9, 310k4(5))* | |
| | 🔑 | |
| | 310 | Prisons |
| | 310II | **Prisoners** and Inmates |
| | 310II(A) | In General |
| | 310k113 | Particular **rights** and disabilities |
| | *(Formerly 310k4(5))* | |
| 218 Cases that cite | | |

Notes

Quick Check

8

| | | | |
|---|---|---|---|
| | officials, so as not to be facially invalid. U.S.C.A. Const.Amends. 1, 14. | | |
| | 343 Cases that cite this headnote | | |
| 9 | Marriage and Cohabitation | 🗝 253 | Marriage and Cohabitation |
| | Prisons | 253III | Creation, Existence, and Validity of Marital Relationship |
| | Right to marry, like many other rights, is subject to substantial restrictions as result of incarceration. | 253III(A) | In General; Requisites and Essentials |
| | | 253k221 | Persons Who May Marry |
| | | 253k228 | Civil status or condition |
| | | *(Formerly 253k9, 310k4(5))* | |
| | 90 Cases that cite this headnote | 🗝 310 | Prisons |
| | | 310II | **Prisoners** and Inmates |
| | | 310II(A) | In General |
| | | 310k113 | Particular rights and disabilities |
| | | *(Formerly 310k4(5))* | |
| 10 | Constitutional Law | 🗝 92 | Constitutional Law |
| | Marriage and Cohabitation | 92VII | Constitutional Rights in General |
| | Prisons | 92VII(B) | Particular Constitutional Rights |
| | Right of inmate to marry is one protected by Constitution. | 92k1093 | Family and family law in general |
| | | *(Formerly 92k82(13))* | |
| | | 🗝 253 | Marriage and Cohabitation |
| | | 253III | Creation, Existence, and Validity of Marital Relationship |
| | 183 Cases that cite this headnote | 253III(A) | In General; Requisites and Essentials |
| | | 253k221 | Persons Who May Marry |

Notes

Quick Check

8